# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**MELISSA W. MOREAU**

**VERSUS**

**CADDO PARISH DISTRICT ATTORNEY OFFICE**

**CIVIL ACTION NO. 5:18-CV-0982**

**JUDGE ELIZABETH ERNY FOOTE**

**MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

Before the Court is Defendant's motion for summary judgment. [Record Document 23]. The motion has been fully briefed and is ripe for review. [Record Documents 23-1, 27, 28]. For the reasons stated herein, Defendant's motion is **GRANTED**.

## BACKGROUND

Plaintiff Melissa Moreau ("Moreau"), a white female over the age of 50, began working as an Assistant District Attorney for the District Attorney's Office for Caddo Parish ("DA's Office") in October 2014. [Record Documents 24-1 at 1, 25 at 64 and 27-1 at 1]. At the time she started, she had prior experience in child support matters and no experience prosecuting criminal drug offenses or conducting jury trials. [Record Document 25 at 8-15, 179-81]. From the time Moreau began at the DA's Office until January 2017, she was assigned to the Child Support Section. [Record Documents 24-1 at 1 and 27-1 at 1].

On January 27, 2017, Moreau fell while working in the Caddo Parish Courthouse and injured her right knee. [Record Documents 24-1 at 1 and 27-1 at 1]. As a result of this, she had knee surgery on February 1, 2017 and remained out of work receiving worker's compensation until June 2017. [Record Document 23-6 at 12-13, 36]. By June, it became clear

1

that she needed a second surgery before she could return to work so Moreau filed for Family Medical Leave Act ("FMLA") leave, which she received beginning on June 19, 2017.[1] [Record Documents 24-1 at 1, 25 at 36-37, and 27-1 at 1].

Moreau had her second surgery in July 2017 and was medically released to return to work on August 8, 2017. [Record Document 25 at 37]. Moreau informed administrator Gary Gaskins ("Gaskins") of this and he told her that she needed to be one "hundred percent completely released from medical care" before returning to work. [Record Documents 23-10 at 1 and 25 at 38-39]. Gaskins does not dispute telling her this, possibly at the direction of the Caddo Parish District Attorney, James Stewart ("Stewart"). [Record Document 27-2 at 6]. On August 14, 2017, Moreau returned to the doctor who had initially completed her paperwork for FMLA leave and the doctor amended her FMLA leave paperwork to state that she should have intermittent leave, which meant that she could return to work but have time off to attend physical therapy. [Record Document 25 at 41-42]. Moreau states that even with this amended paperwork, Gaskins would not allow her to return to work. [Record Document 25 at 42]. This caused her to again return to her doctor who instead recommended that she remain out of work and attend physical therapy three times per week. [Record Document 25 at 42]. With this treatment plan, Moreau was fully released to return to work on September 7, 2017. [Record Document 25 at 42].

On September 6, 2017, Gaskins informed Moreau that she was to report to First Assistant District Attorney Laura Fulco ("Fulco") on the morning of September 7, 2017.

---

[1] It is unclear from the record whether Moreau continued receiving worker's compensation benefits while she was on FMLA leave from June 19, 2017 to September 7, 2017.

[Record Documents 23-7 at 5 and 25 at 43]. Upon reporting to Fulco, Moreau was informed that she had been reassigned to work in Section 5, a criminal division prosecuting drug offenses. [Record Documents 23-7 at 10-11 and 25 at 45-46, 48]. According to Stewart, there was concern that the DA's Office would lose funding for Moreau's position if there was no lawyer drawing a salary for Moreau's position in the Child Support Section during her absence. [Record Document 23-10 at 1-2]. Therefore, attorney Lauren Tarver ("Tarver") was contracted on a monthly basis to temporarily take her place. [Record Documents 23-9 at 11 and 23-10 at 2]. Stewart eventually hired Tarver, an African American female younger than Moreau, permanently for the position and Moreau was transferred to Section 5 to provide that section with a third attorney like the other criminal sections had. [Record Documents 23-6 at 25, 23-7 at 11, 23-9 at 11-12 and 23-10 at 1-2].

Moreau was upset by the reassignment, expressed as much to Fulco on her first day in Section 5, and requested to speak with her privately, a request which Fulco refused. [Record Documents 23-7 at 19-20 and 25 at 48, 52]. According to Fulco, the only accommodation request Moreau made that day was to wear flat shoes. [Record Document 23-7 at 21-22]. Moreau also spoke with her new Section Chief, Janet Silvie ("Silvie"), that day and told her that she felt she was being retaliated against for her long absence. [Record Documents 23-7 at 33 and 25 at 52]. Silvie discussed with Moreau accommodations such as making sure Moreau did not have to carry or push boxes of files and informing judges that she would need to sit during court proceedings. [Record Document 23-7 at 33-34].

Moreau completed the workday in Section 5 on September 7, 2017 but began to experience pain in her hip and thigh which caused her to contact her doctor. [Record

Documents 24-1 at 2, 25 at 53-54, and 27-1 at 1]. Moreau's doctor reinstated her leave and Moreau again received worker's compensation. [Record Documents 23-4 at 4 and 25 at 56]. While on leave, Moreau underwent a functional capacity exam. [Record Documents 23-4 at 6 and 25 at 55].

On September 13, 2017, Moreau informed Stewart and others in the office that she was "asserting a claim for discrimination" under multiple federal statutes. [Record Document 23-6 at 40]. Stewart engaged outside counsel, Allison Jones ("Jones"), to investigate. [Record Document 23-8 at 5]. As part of this investigation, Jones interviewed Moreau on September 29, 2017. [Record Document 25 at 62]. Along with other documents, Moreau provided Jones with a list of accommodations Moreau was requesting for her knee injury. [Record Documents 23-8 at 7-8 and 25 at 61-62]. According to Moreau, she also requested that Jones provide the list of accommodations to Stewart, but Stewart denies receiving it prior to Moreau's resignation. [Record Documents 23-9 at 12-13 and 25 at 61-62].

Moreau's list of accommodations included requests such as: restoring her to her position in the Child Support Section; providing an ergonomic chair and desk; temporarily assigning her to an easier position in the Child Support Section; and providing assistance transporting files. [Record Document 23-8 at 27]. If Moreau's request to be transferred back to the Child Support Section would not be granted, she requested that she: be assigned a handicap parking spot at the courthouse that housed the Section 5 office; be provided with a "motorized assistive device that meets ADA standards"; and have a hired assistant transport files and "provide [her] with physical assistance throughout the day." [Record Document 23-8 at 28]. Lastly, she requested that her FMLA "leave balance" be adjusted to "reflect [her]

Doctor's orders on 8/8/2017 and 9/5/2017 of return to work and for not offering [her] accommodations and/or conversations of accommodations under ADA." [Record Document 23-8 at 27].

Moreau remained on leave until her doctor released her to return on October 12, 2017. [Record Document 23-4 at 4]. Between October 13, 2017 and October 23, 2017, Moreau remained out of work and made several attempts at contacting people at the DA's Office and worker's compensation adjustors regarding her requested accommodations. [Record Documents 23-4 at 4 and 25 at 55-56, 78]. On October 20, 2017, Stewart sent Moreau a letter stating that he had not seen her list of requested accommodations and that Jones had not yet completed her investigation and provided him with a report. [Record Document 23-9 at 30]. He further informed her that a position "substantially equivalent" to her work in the Child Support Section and within the requirements of her functional capacity exam remained available to her. [Record Document 23-9 at 30-31]. On October 23, 2017, Moreau resigned. [Record Document 23-4 at 6].

Moreau filed a complaint with the EEOC and received notice of her right to sue before filing the instant suit alleging that Stewart is liable in his official capacity for violations of the FMLA, Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), Title VII, the Equal Pay Act ("EPA"), and several related Louisiana state laws.

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous"

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997

F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts

as to which it "contends there is no genuine issue to be tried." The opposing party must then

set forth a "short and concise statement of the material facts as to which there exists a genuine

issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will

be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

*Id.*

## II.   Plaintiff's FMLA Interference Claim

Moreau first alleges that Stewart interfered with her rights under the FMLA by denying

her request to return to work while taking intermittent FMLA leave for physical therapy in

August 2017. [Record Document 15 at 9]. Stewart contends that there was no interference

with Moreau's FMLA rights because she received the FMLA benefits she requested. [Record

Document 23-1 at 16]. Moreau has created a genuine issue of fact as to whether she was denied

the right to return to work using intermittent FMLA leave in August 2017, and the Court must

therefore consider whether this denial could, as a matter of law, amount to interference with

Moreau's FMLA rights.

Under the FMLA, it is "unlawful for an employer to interfere with, restrain, or deny

the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C.

§ 2615(a)(1). To establish a prima facie case under the interference clause, a plaintiff "must

show: (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA

requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to

take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). A plaintiff must also show that she was prejudiced by the interference. *Downey v. Strain*, 510 F.3d 534, 539 (5th Cir. 2007). Stewart does not challenge Moreau's ability to establish the first four elements of her claim, and thus the Court will consider only whether Stewart denied Moreau benefits to which she was entitled under the FMLA and whether Moreau can establish that she was prejudiced by any denial of her FMLA rights.

Viewing the facts in the light most favorable to Moreau, on August 14, 2017, she presented certification from a doctor stating that she no longer needed to remain on full-time FMLA leave and was instead medically able to return to work using only intermittent leave for continued physical therapy. Under § 2612(b)(1) of the FMLA, this means that Moreau was entitled to utilize an intermittent or reduced leave schedule. 29 U.S.C. § 2612(b)(1); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89-90 (2002) (describing intermittent leave taken under § 2612(b)(1) as a "right"). The evidence also shows that when Moreau presented this release to Gaskins, he did not let her return until she could do so without restrictions. By refusing to allow Moreau to take intermittent leave, Stewart denied Moreau an FMLA entitlement. *Crankshaw v. City of Elgin*, No. 1:18-cv-75-RR, 2019 WL 3883565, at *7-8 (W.D. Tex. Jan. 14, 2019).

Moreau has failed to prove that she was prejudiced by Stewart's failure to allow her to use intermittent leave, though. For example, she has not provided evidence demonstrating that this denial caused her any economic harm. *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669

(E.D. La. 2014) ("Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate.") (citing 29 U.S.C. § 2617(a)(1)); *Brock-Chapman v. Nat'l Care Network, L.L.C.*, No. 3:10-CV-454-B, 2013 WL 169177, at *8 (N.D. Tex. Jan. 16, 2013) (finding prejudice when an employee provides evidence of economic harm). Moreau's FMLA interference claim is therefore **DISMISSED with prejudice**.

## III.    Plaintiff's FMLA Retaliation Claim

Moreau next argues that Stewart retaliated against her for taking leave by failing to reinstate her to the position she held prior to taking leave or a substantially equivalent position. [Record Document 15 at 9]. According to Stewart, Moreau cannot establish a prima facie case of retaliation because she cannot demonstrate that she suffered any adverse employment action, that she was treated less favorably than other employees, or that any adverse decisions were made because she took FMLA leave. [Record Document 23-1 at 17].

To state a claim for retaliation under the FMLA, an employee must show: "1) [s]he was protected under the FMLA; 2) [s]he suffered an adverse employment action; and 3) [s]he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (quoting *Mauder v. Metro. Tranist Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)). When there is no direct evidence of discriminatory intent and the employee has established a prima facie case, the Court must apply the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792. 802-03

(1973); *Tatum v. So. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019). Under this framework, the burden first "shifts to the employer to articulate a legitimate, nondiscriminatory reason" for its action. *Id.* (quoting *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)). If the employer does so, the "burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.* (quoting *Richardson*, 434 F.3d at 332-33). For FMLA retaliation claims, a plaintiff may also satisfy her burden by demonstrating that discrimination was a motivating factor in her termination. *Richardson*, 434 F.3d at 333.

Stewart challenges Moreau's ability to establish the second and third elements of her prima facie claim, and the Court will therefore assume that Moreau has adequately proven that she was entitled to the protections of the FMLA. The Court turns first to the second element, whether Moreau suffered an adverse employment action. Moreau asserts two somewhat related adverse employment actions—her transfer from the Child Support Section to Section 5 and constructive discharge.

### a. Plaintiff's Transfer as an Adverse Employment Action

An employment transfer may qualify as an adverse employment action if the transfer is one that a "reasonable employee would have found" to be "materially adverse."[3] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 484-85 (5th Cir. 2008). The material adversity standard is intended to

---

[3] The Supreme Court first enunciated and applied this standard in the Title VII context but the Fifth Circuit has also applied this standard to FMLA retaliation claims. *See, e.g., Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705-06 (5th Cir. 2016); *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008).

"separate significant from trivial harms." *Burlington N.*, 548 U.S. at 68. In the context in which the Supreme Court enunciated this standard, "material adversity" means that the adversity is of a level that "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Importantly, this is an objective standard and is highly context specific. *Burlington N.*, 548 U.S. at 68-69. For example, a change in working schedule that may not be of high import to one employee may matter greatly to a young parent with school-aged children. *Id.* at 69. Factors to consider include whether the transfer affected the plaintiff's "job title, grade, hours, salary, or benefits" and whether the new position "resulted in a 'diminution in prestige or change in standing among her co-workers.'" *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

Moreau has presented evidence that her transfer to Section 5 did entail a slight change in her work duties. While both jobs involved acting as a prosecutor and going to court, the subject matter of the prosecutions differed between the assignments and Section 5 held the possibility that Moreau would have to prosecute jury trials. [Record Document 23-7 at 10-11]. She has not shown any way in which her position in Section 5 resulted in a change of her job title, grade, hours, salary, or benefits. Likewise, Moreau has not presented any evidence demonstrating that a position in Section 5 was a less prestigious position. To the contrary, Moreau has argued that this position should have come with a pay raise, which suggests it is a more prestigious position. [Record Document 25 at 71]. She has also failed to present evidence that working in Section 5 would affect her standing with her co-workers. The undisputed

evidence demonstrates that transfers between sections of the DA's Office were not unusual, with many of Moreau's coworkers transferring multiple times. [Record Document 23-11 at 2-4].

The Court acknowledges that Moreau lacked experience in criminal drug prosecution and jury trials at the time she was transferred to Section 5, which understandably led her to find this position less desirable. However, subjective preference cannot support a claim that a transfer is materially adverse. *Aryain*, 534 F.3d at 485. Her slight change in job duties and lack of experience in criminal drug offenses that may make her new position more challenging are not enough to conclude that a reasonable employee would find the assignment to be an adverse employment action. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 828 (5th Cir. 2019) (noting that a teacher's claim that curriculum changes were an adverse employment action fails because "curriculum changes are a reality of being a teacher"); *Stewart*, 586 F.3d at 332 (a "significantly increased" workload without a change in duties, hours, or pay is not materially adverse); *Aryain*, 534 F.3d at 485 (transfer from a position as a cashier in the Tire Lube Express Department to a position as sales associate in the infant department with somewhat different job duties, without more, is not materially adverse). The Court therefore concludes that Moreau's transfer does not qualify as an adverse employment action that can support her prima facie case for FMLA retaliation.

**b. Constructive Discharge**

An employee may also satisfy the adverse employment action requirement by proving that she was constructively discharged. Constructive discharge occurs "when an employee has quit her job under circumstances that are treated as an involuntary termination of

employment." *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The test for whether an employee felt compelled to resign is an objective one. *Id.* The employee must show that a reasonable employee would have felt compelled to resign in the employee's situation. *Id.* at 650. The inquiry is both "case- and fact-specific." *Id.* at 649. The following factors, "singly or in combination" are relevant:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Id.* at 649-50 (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).

Under this standard, Moreau cannot establish that she was constructively discharged because she cannot show that a reasonable employee faced with the same situation would have felt compelled to resign. Moreau has not created a dispute of fact about any of the factors above save that she was assigned to work for a younger supervisor. [Record Documents 23-1 at 15]. However, she has created at least a dispute of fact about other potentially relevant considerations. For example, there is at least some dispute of fact about how responsive Stewart and other employees of the DA's office were when Moreau requested information about her return to work in October 2017. She has also established that she was transferred to work in Section 5 prosecuting cases with which she was not familiar. This does not rise to the level of being so intolerable that a reasonable employee would feel compelled to resign, however, especially while an investigation into Moreau's claims of discrimination and requests for reasonable accommodations remained pending with outside counsel. *Bozé v. Branstetter*, 912

F.2d 801, 805 (5th Cir. 1990) (noting that a reasonable employee would engage in the internal grievance process before choosing to leave his job).

The Court thus concludes that Moreau has not shown that she was constructively discharged. Because Moreau cannot prove that she suffered an adverse employment action, she has failed to establish her prima facie case of FMLA retaliation and her FMLA retaliation claim is **DISMISSED with prejudice**.[4]

## IV.  Plaintiff's Worker's Compensation Retaliation Claim

Moreau also contends that Stewart retaliated against her for filing a worker's compensation claim by "reassigning her to a more difficult position for which she had no experience or training upon her return to work." [Record Document 15 at 10]. Stewart responds that Moreau's claim must fail because she cannot establish a critical element of her claim—that she was discharged from employment at the DA's office. [Record Document 23-1 at 18-19].

---

[4] The Court notes that this claim may have more appropriately been raised as a claim for interference with Moreau's rights under the FMLA—that is, as a claim that Stewart interfered with Moreau's FMLA right to be reinstated to her prior position or a substantially equivalent position upon her return from leave. *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013) ("The FMLA contains both *pre*scriptive provisions that create a series of entitlements or substantive rights and *pro*scriptive provisions that protect employees from retaliation or discrimination based on their exercise of those rights. Shirley's claimed right to return to work after his qualified absence is a substantive right within the first category.") (emphasis in original); *Mauder*, 446 F.3d at 580 (explaining that an employee's right to "return to the same position after a qualified absence" falls under the FMLA interference clause). If Moreau intended to raise her claim as one for interference, it nevertheless fails because Moreau has not demonstrated that her position in Section 5 had more than *de minimis* differences from her position in the Child Support Section. *See Smith v. E. Baton Rouge Par. Sch. Bd.*, 453 F.3d 650, 651-52 (5th Cir. 2006).

Louisiana law prohibits an employer from "discharg[ing] an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States." La. R.S. § 23:1361(B). To recover, an employee must "establish by a preponderance of the evidence that she was discharged because she asserted a workers' compensation claim." *Kendrick v. Hercules Concrete Plumbing Serv. of Miss., Inc.*, 51,190 (La. App. 2 Cir. 2/17/17); 216 So .3d 261, 265 (quoting *Hansford v. St. Francis Med. Ctr., Inc.*, 43,984 (La. App. 2 Cir. 1/14/09); 999 So. 2d 1238, 1241-42).

Moreau's claim must fail because she does not allege that she was actually discharged from employment and, as previously discussed, she cannot establish that she was constructively discharged. Moreau's worker's compensation retaliation claim is **DISMISSED with prejudice**.

## V.   **Plaintiff's Title VII Racial Discrimination Claim**

Moreau next alleges that Stewart discriminated against her on the basis of race by replacing her in the child support position with an African American lawyer, who is the same race as Stewart. [Record Document 15 at 9-10]. Stewart again argues that Moreau's claim fails because she cannot demonstrate that she suffered an adverse employment action or that Stewart's legitimate business reasons for the transfer are pretextual. [Record Documents 23-1 at 11 and 28 at 5].

A Title VII racial discrimination claim requires a plaintiff to demonstrate that she suffered an adverse employment action. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014). When a claim is based on discrimination, as opposed to retaliation, an adverse

employment action "consist[s] of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* A transfer or reassignment may qualify as an adverse employment action if it is the equivalent of a demotion. *Id.* This does not require that the transfer "result in a decrease in pay, title or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007)). In contrast, "a 'purely lateral transfer' is not an adverse employment action." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)). A transfer is purely lateral when the new position has "the same job title, benefits, duties, and responsibilities." *Id.*

Moreau has failed to demonstrate that her position in Section 5 is objectively worse than her position in the Child Support Section. As previously discussed, Moreau's position did not result in a reduction in pay, title, or grade. It was not less prestigious. Moreau retained her job title and benefits. The position did entail a slight change in her duties and responsibilities—instead of going to hearings regarding child support matters she would be expected to prosecute drug offenses which may entail jury trials—but this is not sufficient to establish that her transfer was akin to a demotion. *Compare Outley*, 840 F.3d at 217 (a transfer is not materially adverse when the new position involved a higher workload and a change in working hours) *with Thompson*, 764 F.3d at 504-05 (a change in work duties so significant that a police detective effectively was only able to work as an assistant to other detectives may constitute an adverse employment action).

For the reasons previously explained, Moreau has also failed to establish that she was constructively discharged, so she cannot establish the requisite adverse employment action through a constructive discharge claim. *McCoy v. City of Shreveport*, 492 F.3d 551, 557-58 (5th Cir. 2007) (applying the same constructive discharge standard applied to an FMLA retaliation claim to a Title VII racial discrimination claim). Moreau's Title VII racial discrimination claim is therefore **DISMISSED with prejudice**. Moreau's state law racial discrimination claim raised under Louisiana Revised Statute 23:332 is also **DISMISSED with prejudice** because Moreau failed to establish that she suffered an adverse employment action. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (holding that the Louisiana Employment Discrimination Law is governed by the same analysis as its comparable Title VII claim).

## VI. Plaintiff's ADEA Claim

Moreau next alleges that Stewart engaged in age discrimination by replacing her in the child support position with a younger lawyer with no experience in child support matters. [Record Document 15 at 10]. Stewart argues that Moreau's claim fails because she has not shown that she suffered an adverse employment action and, even if she had, she cannot meet her burden of demonstrating that Stewart's legitimate business reasons for her transfer are pretextual. [Record Documents 23-1 at 15-16 and 28 at 5].

A prima facie case of age discrimination requires a plaintiff to "show that: (1) [s]he was discharged; (2)[s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age."

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Moreau's ADEA claim fails for the same reasons as her Title VII racial discrimination claim—failing to show that she suffered an adverse employment action. *Meinecke v. H&R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995) ("The first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case."); *Anthony v. Donahoe*, 460 F. App'x 399, 404 (5th Cir. 2012) (holding that the failure to establish an adverse employment action under Title VII forecloses a plaintiff's ADEA claim). Moreau's ADEA claim is therefore **DISMISSED with prejudice**. Her state law age discrimination claim raised under Louisiana Revised Statute 23:312 is also **DISMISSED with prejudice** for the failure to prove an adverse employment action. *Simmons v. Greyhound Lines, Inc.,* No. CV 18-272-SDD-EWD, 2020 WL 61039, at *5 (M.D. La. Jan. 6, 2020) (analyzing a plaintiff's Louisiana age discrimination claim under the federal ADEA jurisprudence) (citing *LaBove v. Raftery,* 00-1394 (La. 11/28/01); 802 So. 2d 566, 573).

## VII.  Plaintiff's Disability Discrimination Claim

Moreau also argues that Stewart "affirmatively discriminated against [her] based on her disability by reassigning her to a more difficult position for which she had no experience or training." [Record Document 15 at 9]. To establish a claim of disability discrimination under the ADA, an employee must show that: (1) she is disabled; (2) she was qualified for the job; and (3) she "was subject to an adverse employment decision on account of [her] disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

Like Moreau's ADEA claim, her ADA discrimination claim based on her transfer to Section 5 is analyzed under the same standard as her Title VII discrimination claim. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 n.3 (5th Cir. 2018). Hence her claim again fails for the lack of an adverse employment action and is **DISMISSED with prejudice**. Similarly, her state law disability discrimination claim raised under Louisiana Revised Statute 23:323 is interpreted the same as federal law and thus Moreau's failure to demonstrate an adverse employment action is fatal to her claim. *Thibodeaux v. Dow Chem. Co.*, No. CV 16-00567-BAJ-RLB, 2018 WL 2269906 at * 10 (M.D. La. May 17, 2018) (numerous citations omitted). Therefore, Moreau's state law disability discrimination claim based on her transfer to Section 5 is also **DISMISSED with prejudice**.

## VIII.  Plaintiff's ADA Reasonable Accommodation Claim

Moreau asserts that Stewart also violated the ADA by failing to provide, or even discuss with her, reasonable accommodations necessary upon her return to work. [Record Document 15 at 9]. Stewart denies this and argues that summary judgment is appropriate because Moreau "did not engage in a dialogue" regarding accommodations and "withdrew from any process moving toward an accommodation" by resigning before the investigator hired to handle Moreau's claim completed her work. [Record Document 23-1 at 17].

Under the ADA, impermissible discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Once an employee "requests

a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *E.E.O.C. v. Argo Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). The employer violates the ADA if the failure to engage in a good faith interactive process leads to a failure to make reasonable accommodations. *Griffin*, 661 F.3d at 224. The employer does not violate the ADA if the responsibility for the breakdown of the process lies with the employee. *Id.*

Viewing any disputed evidence in the light most favorable to Moreau, the evidence is that on her first day in Section 5 she informed her supervisor that she would need to wear flat shoes. They also discussed accommodations such as ensuring that Moreau did not have to move files and informing judges that she would need to sit during court proceedings. After that day, Moreau did not return to work and had her medical leave reinstated. Her next request for a discussion regarding accommodations was rejected as "premature" on September 13, 2017. [Record Document 23-4 at 4]. The next day, while still on leave, she asserted a claim for discrimination. In response, Stewart engaged outside counsel to investigate. Moreau met with the independent investigator on September 29, 2017 and for the first time presented a list of requested accommodations. She also attempted to send this list to Stewart the same day. Moreau's leave ended on October 12, 2017 and she again inquired about accommodations. On Friday, October 20, 2017 Stewart unequivocally told Moreau that he had not received the list in September, that Jones's investigation was ongoing, and that he would "continue to participate in any interactive process in good faith." [Record Document 23-9 at 34]. Moreau

emailed him her list of accommodations that day. Before having any further communications with Stewart, she resigned on Monday, October 23, 2017.

Based on these facts, Stewart cannot be held liable for the failure to engage in the interactive process or for the failure to make reasonable accommodations because it is Moreau, not Stewart, who ultimately withdrew from the process. By resigning, she effectively ended the possibility for the interactive process to be completed either by directly communicating with Stewart about the list of accommodations she transmitted to him on October 20 or through the completion of Jones's investigation into the matter. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 739-40 (5th Cir. 1999) (finding that the employee, not the employer, was responsible for the breakdown in the interactive process when the employee quit before it was clear there would be no further discussions or that the employer expected the employee to work without any further accommodations). Without allowing the process to play out, the Court can only speculate as to what additional accommodations may have been provided. *Griffin*, 661 F.3d at 225. The Court cannot rely on this speculation to conclude that any failures on Stewart's part during the interactive process actually *led* to any failures to accommodate. *Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 424 (5th Cir. 2014) (summary judgment is appropriate in a case where there remained disputed facts as to whether the employer participated in the interactive process when there is no evidence that a reasonable accommodation was possible because the employee was unable to show that the employer's failure to engage caused any failure to accommodate).

Moreau's failure to accommodate claim is **DISMISSED with prejudice**. Her state law failure to accommodate claim raised under Louisiana Revised Statute 32:323 is also

**DISMISSED with prejudice** because Moreau, not Stewart, withdrew from the interactive process. *Thibodeaux*, WL 2269906 at * 10 (disability discrimination claims raised under Louisiana Revised Statute 23:323 are interpreted the same as federal law).

## IX.  Plaintiff's Equal Pay Act Claim

Moreau alleges that Stewart violated the EPA by failing to pay men and women equal wages for performing comparable work. [Record Document 15 at 11]. Stewart responds that Moreau's claim must fail because she has not presented evidence that she performed work requiring equal skill and responsibility as the male attorneys in the office and, further, must fail because Moreau has failed to identify a male comparator. [Record Document 23-1 at 7-9].

To establish a claim under the EPA, a plaintiff must establish that (1) the employer is subject to the EPA; (2) she "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions"; and (3) she was "paid less than the employee of the opposite sex providing the basis of comparison." *Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 340 (5th Cir. 2008) (quoting *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).

Moreau has identified several male lawyers employed by the DA's office whom she alleges are appropriate comparators by virtue of having a similar number of years of experience as a lawyer. [Record Document 27 at 9]. Simply naming male lawyers with a similar number of years of experience and a higher salary is not adequate to demonstrate that the men are appropriate comparators, however. Reviewing the position each man held in the DA's Office reveals that while all of the men are classified as assistant district attorneys like Moreau, they all hold positions such as section chief or supervising attorney, which Moreau did not hold.

[Record Document 23-10 at 2-3]. Without providing evidence regarding the level of skill, effort, and responsibility required for the positions held by any of these men, the Court lacks the evidence needed to conclude that Moreau's position in Section 5 or the Child Support Section required the same level of skill, effort, and responsibility as a section chief or supervising attorney position. Moreau has therefore failed to satisfy her prima facie case and her EPA claim is accordingly **DISMISSED with prejudice**.

## X.  Plaintiff's Title VII Sex Discrimination Claim

According to Moreau, Stewart also engaged in unlawful sex discrimination by failing to pay her commensurate to male prosecutors assigned to prosecute criminal drug offenses that had worked in a district attorney's office for a similar number of years. [Record Document 15 at 9]. Stewart contends that Moreau is unable to establish a prima facie case of pay discrimination because she cannot identify a specific comparator. [Record Document 23-1 at 9-10].

Pay discrimination claims under Title VII are analyzed under the *McDonnell Douglass* framework. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). First, a plaintiff must establish a prima facie case of discrimination. *Id.* Thereafter the burden shifts to the employer to state a legitimate, non-discriminatory reason for the pay discrimination. *Id.* If the employer can do so, the burden shifts back to the plaintiff to establish that the stated reason is pretextual. *Id.* The prima facie case requires that the plaintiff "show that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility." *Id.* When the plaintiff is an individual, she must show that her circumstances are "nearly identical" to those of at least one *specific* better-paid

23

employee who is not a member of the protected class. *Id.* at 523 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

For the reasons previously stated, Moreau has failed to establish that any of her alleged male comparators held positions requiring substantially the same responsibilities as her and her Title VII pay discrimination claim is therefore **DISMISSED with prejudice**. Moreau's state law pay discrimination claim is also **DISMISSED with prejudice** because she failed to identify a proper comparator. *DeCorte*, *497* F.3d at 437.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment is **GRANTED**. All of Plaintiff's claims are **DISMISSED with prejudice**. A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this _26th_____ day of March, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE